Present:   Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, Petty, Beales, Alston,
           McCullough, Huff and Chafin
Argued at Richmond, Virginia


FELECIA AMOS

                                                              OPINION BY
v.        Record No. 1667-11-4                   JUDGE STEPHEN R. McCULLOUGH
                                                              APRIL 9, 2013
COMMONWEALTH OF VIRGINIA


                          UPON A REHEARING EN BANC

              FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                          Benjamin N.A. Kendrick, Judge

           Justin M. Ellis (Steven F. Molo; Martin V. Totaro; MoloLamken,
           LLP, on briefs), for appellant.

           Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli,
           II, Attorney General, on brief), for appellee.


       We consider in this case whether a litigant who was held in summary contempt is

procedurally barred from raising certain arguments on appeal and, if not, whether the trial court

erred in exercising its power of summary contempt. We conclude that Mrs. Amos's legal

arguments are properly before us and that the finding of summary contempt must be reversed.

                                  FACTUAL BACKGROUND

       Felecia Amos and her estranged husband, Antonio Jose Amos, shared custody of their

son. Their relationship was hostile: he had been convicted of assaulting her and she had

obtained a restraining order against him. Mr. Amos's sentencing order imposed a suspended

sentence and required that he be of good behavior. On October 30, 2010, Mrs. Amos wrote a

letter to the Commonwealth's Attorney for Arlington County, with a copy to the court, alleging

that her estranged husband had violated the restraining order. She stated that she was "writing

this letter seeking HELP from your office as I am in fear of my life." (capitalization in original). She alleged, among other things, that during a custody exchange of their son at a McDonald's restaurant, Mr. Amos engaged in actions designed "to intimidate, harass and threaten" her.

Based on Mrs. Amos's allegations, the court issued a rule to show cause to determine whether Mr. Amos had violated the terms of his probation. Mrs. Amos appeared as a witness. She testified that, during the exchange on October 29, 2010, at the McDonald's, her husband crudely insulted her and that he made threats against her, telling her "you're going down." She stated that Mr. Amos began to leave the restaurant after picking up their son, but that he then walked back inside and used more profanity against her. She testified that she feared the situation was escalating, so she asked another customer to escort her to her car. She claimed that Mr. Amos followed her outside, yelling, "hey, buddy, what are [you] doing talking to my wife? She is a married woman," and that she noticed his car following hers after she drove out of the parking lot. Finally, she claimed that Mr. Amos followed her in his car after the incident at the McDonald's. She also testified about a separate occasion in which she felt Mr. Amos was harassing her.

Jason Salinas, a Sergeant in the United States Army, also testified at the hearing. Salinas explained that the First Army Commander had asked him to "help a soldier out" (Mr. Amos had achieved the rank of Colonel in the Army prior to his retirement) by observing the custody exchange of the Amoses' son. Salinas did not serve under Mr. Amos in the military and, in fact, had never seen him before. Salinas stated that he had no personal interest in the outcome of this case. On October 29, 2010, Salinas arrived at the McDonald's and took a seat where he would be well positioned to hear any conversation between Mr. and Mrs. Amos. He testified that, once Mrs. Amos arrived, there was no communication between her and Mr. Amos – they did not speak at all. Mrs. Amos dropped off the child and left. Mr. Amos stayed behind. Mr. Amos

also tape-recorded this exchange. The recording, which was played for the court, is consistent with Salinas's account and inconsistent with the testimony provided by Mrs. Amos. Finally, Mr. Amos denied the allegations Mrs. Amos made against him.

At the conclusion of the hearing, the court asked the prosecutor if she had anything else to add. The prosecutor stated that she was "speechless." In response, the court stated "[w]ell, there are going to be some other people speechless in a minute." The court then announced that it was dismissing the rule to show cause. The transcript reflects the following:

> THE COURT: I'm not through. I am not through. The Court is not through.
>
> When this first started, I said, well, it has been eight months without incident, so - - it's not unusual in a divorce case to see some back and forth, but there has been nothing for eight months, and I just don't know what would be accomplished by punishing this man in keeping this flame burning.
>
> But we have a different situation now.
>
> There's no question that he has not violated this Court's orders. But what we do have is a [serious] situation that this Court does not take lightly.
>
> Ms. Amos, come up here. Come up here by the podium, Ms. Amos. Yes, ma'am. Come on up here. I want to make sure we're on the same page.
>
> Stand in front of that podium.
>
> You have come into this court and made some serious accusations, and you have flat-out lied under oath. And it's very offensive to this Court, to every person in the legal community what you're doing. You're nothing but a vindictive woman towards this man.
>
> I can understand your dislike for whatever reason. But you will not, as far as this Court is concerned, use this process to further that vindictiveness.
>
> The Code of Virginia, under 18.2-456 provides that courts and judges may issue attempts [sic] for contempt and punish them

summarily, only in the following cases - - and there are several, but I want to share one with you.

> "Misbehavior in the presence of the court or so near thereto as to obstruct or interrupt the administration of justice."

> I can't think of any more interruption of justice than what you have done deliberately in this courtroom.

> And the Court finds you in contempt of court. You're sentenced to jail for ten days.

> Remand her into custody, Sheriff.

> THE COURT: Call the next case.
> (Whereupon, the proceedings at 11:00 a.m. were concluded).

Mrs. Amos did not object at the time to being held in summary contempt. The court entered an order the same day memorializing the finding of contempt, remanding her to the custody of the sheriff and ordering a bail bond in the amount of $10,000.[1]

Seventeen days after the hearing, on June 27, 2011, Mrs. Amos filed a "motion to vacate sentence and object to this honorable courts [sic] finding." In her motion, she cited relevant case law, including Scialdone v. Commonwealth, 279 Va. 422, 442, 689 S.E.2d 716, 727 (2010), and argued that holding her in summary contempt violated her due process rights. The trial court never ruled on the motion. She also filed a notice of appeal on June 27, 2011.

I. MRS. AMOS'S ARGUMENTS ARE NOT PROCEDURALLY DEFAULTED.

The threshold question we must address is whether the arguments Mrs. Amos makes on appeal are procedurally defaulted under Rule 5A:18. We conclude, on the specific facts before us, that Mrs. Amos lacked the opportunity to object to the summary contempt finding at the time it was made. Therefore, by operation of Code § 8.01-384(A), the absence of an objection does not prejudice her on appeal.

---

[1] According to her pleadings, Mrs. Amos was released after seven hours of confinement.

- 4 -

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Code § 8.01-384(A) operates in conjunction with this rule. This statute provides, in relevant part, that "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him . . . on appeal." The rule and the statute are complementary: Rule 5A:18 *presupposes* an opportunity to object "at the time of the ruling or order" and Code § 8.01-384(A) expressly provides that where the party does not have the opportunity to object to the ruling or order at the time it is made, the absence of an objection shall not prejudice her on appeal.

We note at the outset that Mrs. Amos did not have an opportunity to object at the time of the ruling or order. Mrs. Amos, who had appeared as a witness rather than as a party, was called to the bench. After the court castigated Mrs. Amos for her lies and for her vindictiveness toward her husband, the court ordered the sheriff's deputy to remove Mrs. Amos from the courtroom and directed the clerk to call the next case. On review of this record, it is plain that Mrs. Amos did not have the "opportunity to object to [the] ruling or order . . . at the time it [was] made."[2]

The Commonwealth responds that even if Mrs. Amos lacked an opportunity to object at the time the court held her in contempt, she in fact had the opportunity to object to the ruling of

---

[2] When exercising its power to hold a witness or a litigant in direct contempt, a court ordinarily will afford the contemnor the opportunity to speak. See Taylor v. Hayes, 418 U.S. 488, 498 (1974) ("[W]here summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution.'" (citation omitted)). See also Benchbook Comm., Virginia Criminal Benchbook for Judges and Lawyers § 14.08[1][c] (2012-13) (checklist for direct contempt includes an opportunity to "[p]ermit contemnor (and contemnor's attorney, if present) to speak"); Benchbook Comm., Virginia Civil Benchbook for Judges and Lawyers § 10.06[4][c][iii] (2012-13) ("Even in summary proceedings, the contemnor should be given the right to explain his or her conduct or to produce reasons why he or she should not be punished or why his or her punishment should be mitigated."). The record reveals no such opportunity here.

the court by filing, as she did, a motion to vacate which asked the court to reconsider. The

Commonwealth further posits that Mrs. Amos's motion was unavailing because, following

Brandon v. Cox, ___ Va. ___, ___, 736 S.E.2d 695, 697 (2012), a litigant must not only file a

motion to reconsider with the clerk of court, but also must take steps to ensure that the court is

"made aware of the argument[s]" in the motion to reconsider. Id. We find the Commonwealth's

arguments unpersuasive for two interrelated reasons.

First, Code § 8.01-384(A) provides that if a party "[had] no opportunity to object to a

ruling or order at the time it [was] made, the absence of an objection shall not thereafter

prejudice him . . . on appeal."

> When the language of a statute is unambiguous, we are bound by
> the plain meaning of that language. Furthermore, we must give
> effect to the legislature's intention as expressed by the language
> used unless a literal interpretation of the language would result in a
> manifest absurdity. If a statute is subject to more than one
> interpretation, we must apply the interpretation that will carry out
> the legislative intent behind the statute.

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007)

(citations omitted). We have no occasion here to spell out how Code § 8.01-384(A) might apply

in other situations. Whatever other situations Code § 8.01-384(A) may cover, it plainly applies

when a litigant has been *foreclosed from* making a timely objection "at the time the ruling or

order was made." And it further plainly indicates that a party shall not be prejudiced on appeal

from that lack of opportunity to object at the time the ruling or order was made. To hold that

Mrs. Amos *is* prejudiced on appeal when she did not have the opportunity to object would

require us to ignore altogether the language in Code § 8.01-384(A) that Mrs. Amos "shall not" be

prejudiced on appeal. We are not at liberty to do so.

Second, there are situations when a delayed objection does no good.[3] A principal purpose of the contemporaneous objection rule is to place the trial court "in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error." Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002) (citation omitted). Requiring a party to file a motion to reconsider in order to preserve an issue might be perfectly sensible in some, perhaps even most, contexts. The same cannot be said, however, with regard to summary contempt. Summary contempt is "immediate[ly] punish[ed.]" In re Oliver, 333 U.S. 257, 274-75 (1948). A contempt finding is effective upon oral pronouncement from the bench. See Petrosinelli v. People for the Ethical Treatment of Animals, Inc., 273 Va. 700, 709, 643 S.E.2d 151, 156 (2007) (noting that a "court's contempt power encompasses written orders as well as 'oral orders, commands and directions of the court'" (quoting Robertson v. Commonwealth, 181 Va. 520, 537, 25 S.E.2d 352, 359 (1943))). Given the immediacy of summary contempt, it is crucial to afford the contemnor the opportunity to object immediately before or after the contempt is pronounced. That way, the trial court will be "in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error." Johnson, 264 Va. at 33, 563 S.E.2d at 731.

---

[3] For example, in a jury trial, objections to improper argument must be made before the case is submitted to the jury – an objection after that time comes too late. Reid v. Baumgardner, 217 Va. 769, 773, 232 S.E.2d 778, 781 (1977). Additionally, in ordinary circumstances, "'an objection to the admissibility of evidence must be made when the evidence is presented. The objection comes too late if the objecting party remains silent during its presentation and brings the matter to the court's attention by a motion to strike made after the opposing party has rested.'" Bitar v. Rahman, 272 Va. 130, 139, 630 S.E.2d 319, 324 (2006) (quoting Kondaurov v. Kerdasha, 271 Va. 646, 655, 629 S.E.2d 181, 185 (2006)). The dissent, in footnote 10, agrees that Code § 8.01-384(A) would preserve appellate review in situations where a trial court has foreclosed an opportunity to contemporaneously make a proffer of evidence, to make objections to improper argument before a jury, and to make objections to the admissibility of evidence. In our view, the immediacy of summary contempt is analogous to these situations.

We further note that Brandon did not involve a situation in which the trial court failed to afford the appellant an opportunity to contemporaneously object. Instead, the litigant in Brandon simply missed her first opportunity to object and then sought to make up lost ground by asking the court to reconsider. Therefore, the Court in Brandon had no occasion to construe the language from Code § 8.01-384(A) at issue here, namely, that an appellant shall not be prejudiced on appeal when that litigant "[had] no opportunity to object to a ruling or order at the time it [was] made." It is noteworthy that, in quoting from Code § 8.01-384(A) in Brandon, the Supreme Court specifically omitted the language above by inserting ellipses where this language appears. ___ Va. at ___, 736 S.E.2d at 696. Nor was Brandon a summary contempt case. Brandon involved a landlord tenant dispute regarding the return of a security deposit. Id. at ___, 736 S.E.2d at 695. In short, Brandon does not supply the rule of decision here.

Certainly, a person who had no opportunity to object at the time a trial court found her in summary contempt may be able to and may choose to file a motion to reconsider. It may even be wise to do so. Such a step, however, is not required under Code § 8.01-384(A) in order to preserve an issue for appellate review.[4] Moreover, forcing a contemnor to seek reconsideration as the exclusive means of preserving a challenge to a finding of summary contempt places that person in a precarious position with regard to obtaining appellate review. For one thing, the contemnor may have served all or part of the sentence for contempt prior to having the chance to ask for reconsideration and thus face little incentive to seek appellate relief. For another, the contemnor, like all litigants, has no right to present oral argument on a motion to reconsider.

---

[4] In Nusbaum v. Berlin, 273 Va. 385, 641 S.E.2d 494 (2007), a summary contempt case, the Supreme Court of Virginia held the due process argument defaulted on appeal. The litigant, who appeared as an attorney rather than as a witness, was not, like Mrs. Amos, foreclosed from offering an objection at the time the Court pronounced its judgment of summary contempt. As the Court expressly noted, it had no occasion to apply Code § 8.01-384(A) in that case. Id. at 406, 641 S.E.2d at 505. Moreover, the contemnor in Nusbaum received as his punishment a fine rather than immediate incarceration.

Instead, such arguments are presented at the discretion of the trial court. Rule 4:15(d). Although that rule governs civil cases, no case suggests a trial court has any less discretion in a criminal case. Such matters are commonly disposed of on the pleadings, without a hearing, in criminal and in civil cases. In addition, if the record does not show that the trial court has been made aware that a reconsideration motion has been filed, the mere filing of the motion will not be sufficient to preserve the arguments made for the first time in the reconsideration motion. Brandon, ___ Va. at ___, 736 S.E.2d at 697. It will not always be clear, particularly to *pro se* litigants, how to make the trial court aware of the filing of the motion. Finally, if the court fails to rule on the motion to reconsider, for whatever reason, and the contemnor does not assign error to the failure to rule, the appellate court will hold that the issues on which the trial court failed to rule have been defaulted. Kitchen v. City of Newport News, 275 Va. 378, 387 n.6, 657 S.E.2d 132, 137 n.6 (2008).

We therefore conclude that, in the summary contempt context, the phrase "at the time [the ruling or order was] made," found in Code § 8.01-384(A), means that the contemnor must be afforded the opportunity to object immediately before or after the contempt finding.[5] Furthermore, the fact that the trial court never ruled on her motion to reconsider or was not made aware of it does not foreclose appellate review of Mrs. Amos's arguments. This conclusion is driven by a plain language reading of Code § 8.01-384(A), that the absence of such an opportunity to object "shall not thereafter prejudice [a party] . . . on appeal." Concretely, this means that Mrs. Amos may raise arguments on appeal that she did not present at trial.

II. SUMMARY CONTEMPT WAS NOT APPROPRIATE.

We next consider whether the trial court erred in summarily holding Mrs. Amos in contempt. The answer is fairly straightforward. Indeed, the Commonwealth, which ably presents

_____

[5] Our holding should not be interpreted as disturbing settled precedent regarding the rules of procedural default. As noted above, these rules serve important and salutary purposes.

- 9 -

arguments on the question of procedural default, does not attempt to defend the correctness of the summary contempt finding.

Although it is settled law that courts possess the power to summarily hold persons in contempt, Ex parte Terry, 128 U.S. 289 (1888), the exercise of the summary or direct contempt power "'is a delicate one and care is needed to avoid arbitrary or oppressive conclusions.'" Scialdone, 279 Va. at 442, 689 S.E.2d at 727 (quoting Cooke v. United States, 267 U.S. 517, 539 (1925)). Summary contempt is reserved for ""'exceptional circumstances" . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings.'" Vaughn v. City of Flint, 752 F.2d 1160, 1167 (6th Cir. 1985) (quoting Harris v. United States, 382 U.S. 162, 164 (1965)).

The court held Mrs. Amos in summary contempt at the conclusion of a hearing in which she testified as a witness against her estranged husband. The court based its finding on its conclusion that she had testified untruthfully and that she was vindictive toward her estranged husband. The United States Supreme Court in In re Oliver, 333 U.S. 257, explained that

> [e]xcept for a narrowly limited category of contempts, due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation.

Id. at 275. The Court acknowledged the "narrow exception to these due process requirements" for summary contempt, but that exception is limited to

> charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent "demoralization of the court's authority" before the public.

Id.  "If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires . . . that the accused be accorded notice and a fair hearing as above set out."  Id. at 275-76.

The truth or falsity of Mrs. Amos's testimony and whether she was a victim or a vindictive person "depend[ed] upon statements made by others."  Id. at 275-78.  See also Scialdone, 279 Va. at 445-48, 689 S.E.2d at 729-30.  Therefore, summary contempt was not available.  Accordingly, we reverse the judgment of the trial court holding Mrs. Amos in summary contempt.[6]

### CONCLUSION

We reverse the trial court's judgment of summary contempt and enter final judgment for Mrs. Amos.

Reversed and final judgment.

---

[6] The fact that Mrs. Amos impelled the Commonwealth to request the issuance of a show cause and sent a copy of the letter to the court does not change the answer.  Summary contempt applies when the conduct in question occurs "'in open court, in the presence of the judge . . . where all of the essential elements of the misconduct [were] actually observed by the court.'"  Scialdone, 279 Va. at 444, 689 S.E.2d at 728 (quoting In re Oliver, 333 U.S. at 275).  Mrs. Amos's drafting and mailing of a letter to the Commonwealth's Attorney, with a copy to the court, in which she detailed the allegations against her former husband, did not occur in the presence of the court.

Felton, C.J., with whom Frank, Kelsey, Beales, and Huff, JJ., join, dissenting.

I respectfully dissent. In my view, the record on appeal reflects that appellant failed to preserve her assignments of trial court error for appeal, as required by Rule 5A:18. Moreover, I conclude that the "ends of justice" and "good cause" exceptions to Rule 5A:18 are inapplicable to this appeal. I would affirm the order of the trial court finding appellant guilty of contempt.

A.

The determination whether appellant is procedurally barred from raising her assertion of trial court error on appeal, and, if not, whether the trial court erred by finding her guilty of contempt, is a question of law that this Court reviews *de novo*. Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010).

The record on appeal shows that, on June 10, 2011, appellant appeared before the trial court to testify as to why her ex-husband's probation should be revoked.[7] At the conclusion of the hearing, the trial court dismissed the show cause order against her ex-husband. It then directed appellant to the front of the courtroom. The trial court stated that it found overwhelming evidence that appellant "flat-out lied under oath." It stated that her behavior was "vindictive" and "very offensive to this Court [and] to every person in the legal community." It found that she had "use[d] [the criminal justice system] to further [her] vindictiveness." The trial court then found appellant guilty of contempt of court, sentenced her to jail for ten days, set her bail in the amount of $10,000, and ordered the sheriff's deputy to take her into custody. The trial court then proceeded to call the next case on its docket.

---

[7] At the request of the Office of the Commonwealth's Attorney of Arlington County, the trial court issued the order for appellant's former husband to appear and show cause why his probation should not be revoked. The trial court issued its show cause order after the Commonwealth's attorney forwarded a copy of appellant's letter to the trial court, detailing her allegations of husband's egregious and threatening conduct and asserting he violated the conditions of his probation.

Appellant posted bail and was released from custody approximately seven hours after the trial court found her guilty of summary contempt. Seventeen days later, appellant filed a detailed motion for reconsideration of its finding her guilty of summary contempt, and a motion to vacate her conviction of contempt, in the trial court.[8] The trial court never ruled on appellant's motion, and there is no indication in the record that appellant sought a ruling of the court on her motion for reconsideration or her motion to vacate her contempt conviction.

Where a party fails to obtain a ruling on a matter presented to a trial court, there is nothing for this Court to review on appeal. Fisher v. Commonwealth, 16 Va. App. 447, 454, 431 S.E.2d 886, 890 (1993). See also Taylor v. Commonwealth, 208 Va. 316, 324, 157 S.E.2d 185, 191 (1967) (assignment of error waived on appeal where the trial court did not rule on defendant's objection, and defendant "did not insist that the court rule" on his objection); Williams v. Commonwealth, 57 Va. App. 341, 347, 702 S.E.2d 260, 262 (2010) (appellant waived his assignment of error on appeal because he did not obtain a ruling from the trial court on his pretrial motion to dismiss); Duva v. Duva, 55 Va. App. 286, 299, 685 S.E.2d 842, 849 (2009) ("Because the record does not show that the trial court ruled on appellant's argument, there is no ruling of the trial court for this Court to review on appeal."); Schwartz v. Commonwealth, 41 Va. App. 61, 71, 581 S.E.2d 891, 896 (2003) (because the trial court never ruled upon appellant's motion to set aside his convictions, there was no ruling for this Court to review on appeal); Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998) (where the trial court did not rule on appellant's objection, "there is no ruling for us to review on appeal"); Hogan v. Commonwealth, 5 Va. App. 36, 45, 360 S.E.2d 371, 376 (1987) (because appellant failed to obtain a ruling from the trial court on his argument that lineups were

---

[8] Appellant asserted in her motion that the evidence was insufficient for the trial court to find her guilty of contempt, in violation of Code § 18.2-456(1), and that the trial court deprived appellant of her right to due process by finding her guilty of contempt in a summary proceeding.

improperly conducted and the evidence of identification was otherwise insufficient, this Court had no ruling of the trial court to review).

Because appellant failed to obtain a ruling from the trial court on her motion for reconsideration of its finding her guilty of contempt within the twenty-one-day period prescribed by Rule 1:1,[9] she has waived the trial court error she assigns on appeal.

B.

Despite appellant's failure to obtain a ruling from the trial court on her motion to reconsider its finding her guilty of contempt, the majority concludes that:

> [T]he fact that the trial court never ruled on [appellant's] motion to reconsider or was not made aware of it does not foreclose appellate review of Mrs. Amos's arguments. This conclusion is driven by a plain language reading of Code § 8.01-384(A), that the absence of such an opportunity to object "shall not thereafter prejudice [a party] . . . on appeal." Concretely, this means that Mrs. Amos may raise arguments on appeal that she did not present at trial.

Supra at 9.

Code § 8.01-384(A) provides that if a party "[had] no opportunity to object to a ruling or order at the time it [was] made, the absence of an objection shall not thereafter prejudice him . . . on appeal."

> [T]he lack of an "opportunity to object" . . . relates to the reason why an objection was not made at the time of the ruling. Thus, the statutory exception [to the contemporaneous objection rule] is subsumed under the "good cause" exception [to Rule 5A:18] because both relate to the reason why an objection was not timely made.

Campbell v. Commonwealth, 14 Va. App. 988, 995-96, 421 S.E.2d 652, 656-57 (1992) (Barrow, J., concurring) (citations omitted).

---

[9] Rule 1:1 provides, in pertinent part, that the trial court may modify, vacate, or suspend any final order of the trial court within "twenty-one days after the date of entry, and no longer."

In <u>Nusbaum v. Berlin</u>, 273 Va. 385, 641 S.E.2d 494 (2007), the Supreme Court

considered whether the trial court violated Nusbaum's right to due process by summarily

convicting him of indirect criminal contempt.  The Court held that Nusbaum waived his due

process argument on appeal because he did not afford the trial court the opportunity to rule on

that assertion, as required by Rule 5:25.  The Court concluded that the record on appeal did not

present

> a situation where the circuit court prevented Nusbaum from
> voicing his objections, *asking the court to rule on them*, *or*
> *requesting the court to reconsider a ruling*.  <u>See</u> Code § 8.01-384
> ("if a party has no opportunity to object to a ruling or order at the
> time it is made, the absence of an objection shall not thereafter
> prejudice him . . . on appeal").
>
> \*   \*   \*   \*   \*   \*   \*
>
> While Nusbaum was perhaps surprised when the circuit court
> found him guilty of contempt of court, *he subsequently stated his*
> *due process objections* and *had ample opportunities to ask the*
> *circuit court to rule on them*.

<u>Id.</u> at 406, 641 S.E.2d at 505 (emphasis added).  Despite the Supreme Court's acknowledgment

that Nusbaum was "surprised" by the trial court's ruling, and its acknowledgment that his

surprise excused his failure to object at the time the ruling was made, the Supreme Court found

that he waived his arguments on appeal because he subsequently gained the opportunity to ask

the trial court to rule on his objections, yet he failed to do so.  <u>Cf.</u> <u>Jones v. Commonwealth</u>, 194

Va. 273, 280, 72 S.E.2d 693, 697 (1952) (Supreme Court reached the merits of defendants'

appeal despite their failure to contemporaneously object to the trial court's ruling because

defendants were "taken by surprise at the occurrence" and they "*assigned the action of the trial*

*court as the basis for their motion to set aside the verdict*" (emphasis added)).

Stated differently, the saving provision of Code § 8.01-384(A) protects an appellant from

waiving on appeal only those objections that could not be made at the time of the ruling *and* that

could not be cured by a post-conviction motion.[10]  Clearly, the record shows that, even though

she may have been taken aback by the trial court's ruling, not only did appellant have an

opportunity to object by way of asking the trial court to reconsider its contempt finding, she

actually filed a written motion asking the trial court to do so well within the twenty-one-day

period prescribed by Rule 1:1.  Although Code § 8.01-384(A) protects a party from prejudice on

appeal in the event that she is prevented from asserting a contemporaneous objection in the trial

court, an appellant still may be prejudiced by her failure to obtain a ruling from the trial court on

a later filed objection.  Many procedural default cases take into account that, with or without a

good cause explanation for not making an earlier objection, the "defendants have offered no

explanation for their [later] failure to bring their objections to the attention of the trial court

before the judgment order became final."  Faizi-Bilal Int'l Corp. v. Burka, 248 Va. 219, 223, 445

S.E.2d 125, 127 (1994).[11]

---

[10] For example, an appellant's failure to proffer the evidence she expected to obtain from excluded testimony would normally foreclose an appellate court from determining whether the trial court committed reversible error by disallowing the testimony.  See, e.g., Ray v. Commonwealth, 55 Va. App. 647, 649, 688 S.E.2d 879, 880 (2010) ("'When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error — much less reversible error — without a proper showing of what that testimony would have been.'" (quoting Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977))).  If, however, the record showed that the trial court prohibited a defendant from making a proffer, the saving provision of Code § 8.01-384(A) would permit appellate review of whether the trial court committed reversible error by refusing to allow the defendant to introduce the expected evidence.  See, e.g., Edwards v. Commonwealth, 19 Va. App. 568, 572-73, 454 S.E.2d 1, 3 (1995) ("[U]nder the particular facts of this case, appellant's failure to proffer does not preclude our consideration of this issue. . . . [T]here was no way appellant could have proffered what a potential cross-examination answer would have been until he laid the initial foundation," which the trial court erroneously refused to permit him to do.).  In addition, Code § 8.01-384(A) would permit appellate review of objections to improper argument before a jury and objections to the admissibility of evidence, both of which ordinarily must be made contemporaneously or are forever waived, if the record showed that the trial court foreclosed a litigant from making the objection at the time the error occurred.

[11] The same is true in workers' compensation cases.  For example, a claimant may make two arguments in favor of an award of compensation.  The commission, in turn, may issue an opinion denying coverage on one of the two grounds but refusing to address the second ground.

"Simply put, a defendant may not rely upon Code § 8.01-384(A) to preserve for appeal an issue that he never allowed the trial court to rule upon." Murillo-Rodriguez v. Commonwealth, 279 Va. 64, 84, 688 S.E.2d 199, 210 (2010). Here, appellant had ample time to seek a ruling on her motion asking the trial court to reconsider its finding her in summary contempt, yet she failed to do so.[12] Even assuming, without deciding, that the trial court prevented appellant from making a contemporaneous objection to its finding her guilty of summary contempt, her failure to obtain a ruling from the trial court on her motion to reconsider that finding bars this Court's consideration of her argument on appeal.[13]

---

By issuing a final opinion without a hearing, the commission effectively precludes a contemporaneous objection to its error. The saving provision of Code § 8.01-384(A), like the "good cause" exception to Rule 5A:18, excuses the claimant for not objecting "at the time [the ruling] [was] made" because it was impossible for the claimant to do so. However, the appeal still fails if the claimant neglected to file an after-the-fact motion to reconsider. See Williams v. Gloucester Sheriff's Dep't, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003) ("Finally, the requirement that a litigant file a motion for rehearing or reconsideration to preserve an issue for appeal under these circumstances is not a new requirement. The Court of Appeals has consistently held that the failure to file such motions under these circumstances bars raising the issue on appeal."); Hodnett v. Stanco Masonry, Inc., 58 Va. App. 244, 253, 708 S.E.2d 429, 434 (2011) (this Court refused to consider an issue on appeal because claimant did not file a motion to reconsider after the commission failed to address an issue he raised for review).

[12] The majority cites Rule 4:15(d) in support of its assertion that "a litigant has no right to present oral argument on a motion to reconsider. Instead, such arguments are presented at the discretion of the trial court." Notably, Rule 4:15(d) is a rule of civil procedure that, on its face, relates only to "all civil case motions." There is no corollary rule for criminal case motions that prohibits oral argument on a motion for reconsideration except "at the request of the court." Rule 4:15(d); see generally Part 3A of the Rules of the Supreme Court of Virginia.

[13] That appellant initially appeared before the trial court as a witness at the show cause hearing she initiated does not excuse her failure to preserve her argument that the trial court erred by finding her guilty of contempt. See, e.g., Townes v. Commonwealth, 234 Va. 307, 319, 362 S.E.2d 650, 656 (1987) ("[T]he 'right of self-representation is not a license' to fail 'to comply with the relevant rules of procedural and substantive law.'" (quoting Faretta v. California, 422 U.S. 806, 834-35 n.6 (1975))).

- 17 -

C.

In my view, appellant failed to preserve her assignments of trial court error for appeal. However, appellant's request that this Court invoke the "good cause" or "ends of justice" exception to Rule 5A:18 to reverse her conviction must be considered.

The ends of justice exception "is narrow and is to be used sparingly." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) To establish that a clear miscarriage of justice has occurred, appellant must demonstrate that she was found guilty of conduct that did not constitute contempt, or the record must affirmatively prove that an element of the offense did not occur. Id. at 221-22, 487 S.E.2d at 273.

Appellant has not demonstrated that she was found guilty of conduct that was not contempt, and the record does not show that an element of contempt, a common law offense, did not occur. The Supreme Court has long held that perjury may be punished as contempt, so long as there is "added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty." Ex parte Hudgings, 249 U.S. 378, 383 (1919). The trial court explicitly found that appellant lied under oath. It found that she obstructed the court in the administration of its duties by writing a falsified letter to the Commonwealth's Attorney that implored the trial court's assistance and invoked its jurisdiction. Accordingly, I would decline to apply the ends of justice exception to reach the merits of appellant's assignment of error.[14]

---

[14] Appellant asserts that the trial court erred by finding her guilty of contempt in a summary proceeding. However, whether the trial court erred by punishing her summarily is merely a question of procedure; it has no bearing on whether the substantive elements of the contemptible conduct, here perjury and obstruction of justice, occurred.

Similarly, I find no basis to apply the good cause exception to Rule 5A:18. "'Good cause' relates to the reason why an objection was not stated at the time of the ruling." Campbell, 14 Va. App. at 996, 421 S.E.2d at 656 (Barrow, J., concurring). When an accused has ample opportunity to bring a purported error to the trial court's attention but fails to do so, the good cause exception does not apply. Andrews v. Commonwealth, 37 Va. App. 479, 493-94, 559 S.E.2d 401, 409 (2002). Here, nothing prevented appellant from objecting after the trial court found her guilty of contempt. Even if the circumstances were such that she was taken aback by the trial court's ruling, she filed a post-conviction motion asking the trial court to reconsider its ruling within the twenty-one-day period prescribed by Rule 1:1. However, appellant deprived the trial court of its jurisdiction to consider her motion for reconsideration by filing a notice of appeal to this Court on the same day she filed her motion asking the trial court to reconsider its finding her guilty of contempt. See McCoy v. McCoy, 55 Va. App. 524, 528, 687 S.E.2d 82, 84 (2010) ("When a party files a notice of appeal, that notice 'effectively transfers jurisdiction from the lower court to the appellate court and places the named parties within the jurisdiction of the appellate court.'" (quoting Watkins v. Fairfax County Dep't of Family Servs., 42 Va. App. 760, 771, 595 S.E.2d 19, 25 (2004))); Walton v. Commonwealth, 256 Va. 85, 95, 501 S.E.2d 134, 140 (1998) (once an appellate court acquires jurisdiction of a case, the jurisdiction of the trial court from which the appeal was taken ceases). Because appellant moved the trial court to reconsider its finding her guilty of contempt, but deprived the trial court of the opportunity to rule on her motion, the good cause exception to Rule 5A:18 does not apply.

Accordingly, I find no basis to invoke either the "good cause" or "ends of justice" exception to Rule 5A:18 to reach the merits of appellant's argument on appeal.

D.

Because appellant failed to preserve her assignments of trial court error for appeal, and because neither the "ends of justice" nor "good cause" exceptions to Rule 5A:18 are applicable, I would affirm the judgment of the trial court finding appellant guilty of contempt.

## *VIRGINIA:*

UNPUBLISHED

*In the Court of Appeals of Virginia on* **Tuesday** *the* **23rd** *day of* **October, 2012**.

Felecia Amos,                                                                                            Appellant,

against            Record No. 1667-11-4
                   Circuit Court No. CR10-402-(01)

Commonwealth of Virginia,                                                                    Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On August 21, 2012 came the appellant, by counsel, and filed a petition requesting that the Court set aside the judgment rendered herein on August 7, 2012, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof, the petition for rehearing *en banc* is granted with regard to the issue(s) raised therein, the mandate entered herein on August 7, 2012 is stayed pending the decision of the Court *en banc*, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35(b). The appellant shall attach as an addendum to the opening brief upon rehearing *en banc* a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellant shall file twelve additional copies of the appendix previously filed in this case. In addition, any party represented by counsel shall file twelve electronic copies of their brief (and the appendix, if the party filing the appendix is represented by counsel) with the clerk of

this Court.  The electronic copies must be filed on twelve separate CDs or DVDs and must be filed in Adobe

Acrobat Portable Document Format (PDF).[1]

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:  *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk

---

[1]  The guidelines for the creation and submission of a digital brief package can be found at www.courts.state.va.us, in the Court of Appeals section under "Resources and Reference Materials."

Present: Chief Judge Felton, Judges McCullough and Huff
Argued by teleconference


FELECIA AMOS

                                           MEMORANDUM OPINION[*] BY
v.      Record No. 1667-11-4        CHIEF JUDGE WALTER S. FELTON, JR.
                                               AUGUST 7, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N.A. Kendrick, Judge

(Felecia Amos, *pro se*, on briefs). Appellant submitting on briefs.

Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli, II,
Attorney General, on brief), for appellee.


Felecia Amos ("appellant") appeals from her conviction for contempt, in violation of Code

§ 18.2-456(1), following a summary proceeding in the Circuit Court of Arlington County ("trial

court"). Appellant asserts the trial court erred by finding the evidence sufficient to sustain her

conviction for contempt. She asserts the trial court erred by punishing her for summary contempt

and that the summary proceeding violated her right to due process by failing to afford her notice of

the charge against her, a full hearing, assistance of counsel, and the ability to confront witnesses.

Because appellant failed to preserve her assignments of error for appeal, and because the ends of

justice exception to Rule 5A:18 does not apply, we affirm.

## I. BACKGROUND

By final order dated July 30, 2010, the trial court convicted Antonio Amos ("Antonio"),

appellant's former husband, of assault and battery of appellant. The trial court sentenced him to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

six months in jail, suspended for one year on the condition that he not have contact with appellant except for visitation exchanges of their child, and ordered that he not "harass" appellant.

On October 30, 2010, appellant wrote a letter to the Commonwealth's Attorney for Arlington County ("Commonwealth's attorney"), asserting that Antonio violated the terms of the trial court's final order.[1] Appellant asserted that, on two separate dates, Antonio "intimidate[d], harass[ed], and threaten[ed]" her during an exchange of their child for visitation at a fast-food restaurant. She asserted that Antonio repeatedly cursed and threatened her, that she had to ask an individual to escort her to her car because of Antonio's threatening behavior, that Antonio followed her in his vehicle after she left the restaurant with their son, and that he did not stop following her until she pulled over, forcing him to pass her. Appellant wrote that she feared for her life and was afraid that Antonio would harm her. She requested help from the Commonwealth's attorney, stating she did not "have the resources to prevent the continued harassment and threats."[2]

By memorandum dated November 4, 2010, the Commonwealth's attorney sent a copy of appellant's letter to the trial court, requesting that the trial court issue an order to show cause why Antonio's probation should not be revoked and a bench warrant for his arrest "based on the allegations in the attached letter." On December 3, 2010, the trial court issued its order for Antonio

---

[1] Appellant indicated in her letter to the Commonwealth's attorney that she also mailed a copy of her letter to the trial court.

[2] Appellant wrote, in part:

> This constant communication and intimidation is causing so much
> stress for me. I want to believe that the ORDER is not just a piece
> of paper but carr[ies] the weight and authority as it was stated by
> the [trial court]--NO EXCEPTIONS. Please do not let my
> situation become some comment with a bad ending. I have done
> all that I know how to do. . . . I honestly believe that the
> threatening behavior is ESCALATING. Help me.

to appear and to show cause why his probation should not be revoked "for failure to comply with the terms of his general good behavior condition as ordered by the [trial] [c]ourt."

The show cause hearing was held on June 10, 2011. The Commonwealth's attorney stated at the hearing that appellant's letter "set[] out the reasons for" the show cause hearing before the trial court.

Appellant appeared and testified in conformity with the allegations contained in her letter to the Commonwealth's attorney dated October 30, 2010. Antonio and United States Army Sergeant Jason Salinas testified in Antonio's defense.[3] Both men testified that Antonio did not speak to, curse at, harass, threaten, or follow appellant during the visitation exchanges in question, and both men confirmed that appellant was not aware that Salinas was a witness to the exchanges. Antonio testified that he videotaped one of the visitation exchanges about which appellant complained. He stated he used a camera mounted to the dashboard of his car. As to the second exchange to which appellant referred in her letter to the Commonwealth's attorney and testimony in court, Antonio testified that prior to entering the restaurant to pick up his son, he "wired" himself with a tape recorder. Sergeant Salinas testified that he was not aware that Antonio recorded the visitation exchanges to which he was a witness.[4]

At the conclusion of the hearing, the trial court dismissed the show cause order against Antonio, stating, "[t]here's no question that [Antonio] has not violated this [c]ourt's orders. But

---

[3] Antonio was a retired U.S. Army Colonel at the time of the show cause hearing. Salinas testified that his commanding officer asked him to observe Antonio's visitation exchanges with appellant on October 21 and 29, 2010. Salinas did not know Antonio prior to witnessing the visitation exchanges of the child, and Salinas was never under Antonio's command.

[4] The audio recording of the visitation exchange was played for the trial court. The recording did not contain any of the remarks or threats that appellant attributed to Antonio in her letter to the Commonwealth's attorney or in her testimony regarding the incident.

what we do have is a . . . situation that this [c]ourt does not take lightly." The trial court ordered appellant to the podium and stated:

> You have come into this court and made some serious accusations, and you have flat-out lied under oath. And it's very offensive to this [c]ourt, to every person in the legal community what you're doing. You're nothing but a vindictive woman towards this man.
>
> I can understand your dislike for whatever reason. But you will not, as far as this [c]ourt is concerned, use this process to further that vindictiveness.

The trial court then found appellant in summary contempt for "[m]isbehavior in the presence of the court or so near thereto as to obstruct or interrupt the administration of justice." The trial court stated, "I can't think of any more interruption of justice than what you have done deliberately in this courtroom." The trial court then sentenced appellant to ten days in jail and ordered that she be taken into custody immediately. Appellant did not raise any objection at that time to the trial court's ruling.

On June 27, 2011, seventeen days after the trial court found her in contempt, appellant filed a pleading entitled "Motion to Vacate Sentence and Object to This Honorable Courts [sic] Finding."[5] In that pleading, appellant asserted she testified truthfully about the events that took place during the visitation exchanges. She contended the trial court failed to give her an opportunity to "explain, respond and/or object to being held in contempt," to have counsel present, or to have notice and a hearing. She contended the trial court denied her "all her due process rights as afforded under The Constitution of the United States of America." Appellant asserted her conduct should not have been subject to summary contempt proceedings because "it

---

[5] "All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Rule 1:1.

- 4 -

was not an open, serious threat to orderly procedure" and fell outside the "scope" of Code § 18.2-456(1).

Appellant did not seek a hearing to argue her motion to vacate, and the trial court never ruled on that motion.

## II. ANALYSIS

Appellant asserts the trial court erred by finding the evidence sufficient to sustain her conviction for contempt. She asserts that, even if her testimony was perjured, "[p]erjured testimony, whether written or oral, is not a contemptuous act by itself." Appellant's Br. at 11. Accordingly, she asserts the trial court erred by punishing her for summary contempt and that the summary proceeding violated her right to due process by failing to afford her notice of the charge against her, a full hearing, assistance of counsel, and the ability to confront witnesses. Finally, appellant asserts the trial court "conspired with the Defense Counsel and the Commonwealth of Virginia to prevent [her] from receiving any notice of the potential outcome" and the trial court "should have recused himself" before ruling on her contempt charge. Id. at 16-17.

### A.

Rule 5A:18 provides, in pertinent part, that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

"To preserve an issue for appeal, appellant must make a contemporaneous objection to the court's ruling." Sabol v. Commonwealth, 37 Va. App. 9, 20, 553 S.E.2d 533, 538 (2001).

Appellant did not object to the trial court's ruling at the summary proceeding.[6]  She asserts that her motion to vacate her conviction preserved her arguments for appeal, notwithstanding the trial court's failure to rule on appellant's motion.  However, as the Supreme Court recently held in Brandon v. Cox, 284 Va. 251, 726 S.E.2d 298 (2012):

> Brandon filed a motion for reconsideration with a supporting memorandum containing the argument she advances on appeal but . . . [she] failed to obtain a ruling on her motion to reconsider. . . . Nothing in the record indicates that the trial court was made aware that the motion for reconsideration and memorandum in support thereof were filed . . . .  Because there is no evidence in the record that the trial court had the opportunity to rule upon the argument that Brandon presents on appeal, it cannot be said that the case can be heard in this Court upon the same record upon which it was heard in the trial court and, therefore, the purpose of Rule [5A:18] is defeated.  Thus, we must hold that she has waived her argument by failing to preserve it.

Id. at 256-57, 726 S.E.2d at 301 (footnote omitted).

Because appellant failed to obtain a ruling on her motion to vacate her conviction while the trial court retained jurisdiction over her case, she has waived her arguments on appeal.  Rule 5A:18; see also Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488-89 (1998) (argument barred from appellate consideration under Rule 5A:18 where appellant did not obtain a ruling from the trial court on post-trial motion to set aside court costs).

B.

To the extent appellant failed to present her arguments to the trial court, she asks that we consider them under the ends of justice exception to Rule 5A:18.

"Whether the ends of justice provision should be applied involves two questions: (1) whether there is error as contended by the appellant; and (2) whether the failure to apply the

---

[6] Appellant contends she was unable to object to the trial court's ruling because the trial court gave her no opportunity to speak and ordered that she be taken into custody immediately.  However, the record on appeal fails to show that the trial court took any action to prevent her from objecting to its ruling prior to the sheriff's deputy taking her into custody.

ends of justice provision would result in a grave injustice." Gheorghiu v. Commonwealth, 280 Va. 678, 689, 701 S.E.2d 407, 413 (2010) (interpreting corollary Supreme Court Rule 5:25). Historically, "[w]e have applied the ends of justice exception of Rule [5A:18] in very limited circumstances including, for example, where the record established that an element of the crime did not occur; a conviction based on a void sentence; [and] conviction of a non-offense." Id. at 689, 701 S.E.2d at 414 (citations omitted).

Here, at the conclusion of the show cause hearing, the trial court convicted appellant of summary contempt for "[m]isbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice." Code § 18.2-456(1).[7] Contrary to appellant's assertion, the trial court did not convict appellant of "conduct (testifying), that was not a criminal offense." Appellant's Br. at 12. The trial court found that appellant "vindictive[ly]" instigated the court's revocation process against Antonio to obtain a baseless conviction against him, purposefully caused Antonio to appear before the trial court to respond to her knowingly false accusations, and disturbed the trial court's ability to effectively administer justice. The trial court found that the show cause order and hearing were entirely premised on appellant's calculated misuse of the judicial system, including her letter to the Commonwealth's attorney imploring his assistance to institute revocation proceedings of Antonio's probation and cause him to be incarcerated.

---

[7] The dissent, citing Taylor v. Hayes, 418 U.S. 488, 498 (1974), notes that "[s]ummary contempt is viewed with particular disfavor when a court delays punishing a direct contempt until the completion of trial." Infra at 12. We agree that "[t]he usual justification of necessity [of summary punishment] is not nearly so cogent when final adjudication and sentence are postponed until after trial." Taylor, 418 U.S. at 497. However, we note that the Court in Taylor held that, under "proper circumstances, . . . [summary punishment] may be postponed until the conclusion of the proceedings." Id. at 498; see also Scialdone v. Commonwealth, 279 Va. 422, 447, 689 S.E.2d 716, 730 (2010) ("Circumstances will undoubtedly arise when a trial court observes the essential elements of the contemptible conduct, but nonetheless needs to ask questions to clarify some detail.").

Moreover, appellant's "vindictive" misuse of the judicial system to compel her former husband to be brought, without legal justification, before the trial court to show cause why his probation should not be revoked, occurred openly and in the presence of the trial court. Appellant's letter to the Commonwealth's attorney, copied to the trial court, in which she knowingly falsely asserted that Antonio violated his probation, was misbehavior sufficiently near the presence of the trial court that the court could consider it as part of the misconduct that supported appellant's conviction for contempt, in a summary proceeding, pursuant to Code § 18.2-456(1).

Accordingly, appellant cannot demonstrate, as she must to invoke the ends of justice exception to Rule 5A:18, that the trial court convicted her of conduct that was not a criminal offense.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court convicting appellant of contempt, in violation of Code § 18.2-456(1).[8]

Affirmed.

---

[8] Similarly, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18 for appellant's assertion that the trial court conspired with Antonio's counsel and the Commonwealth's attorney to prevent her from receiving notice of the potential outcome of the June 10, 2011 revocation hearing.

McCullough, J., dissenting.

All too often, instead of a search for the truth, trials devolve into a revolting spectacle of transparent lies. In the face of testimony that reeks of perjury, it is understandable that a trial court would hold a witness in contempt. The power of direct contempt, however, is and should be narrowly circumscribed. In my view, summary contempt was not available here.[9] Furthermore, I would hold that appellant's arguments are not procedurally defaulted on these unusual facts.

## I. AMOS'S ARGUMENTS ARE NOT PROCEDURALLY DEFAULTED.

Rule 5A:18 requires that a litigant timely object to an action by the trial court; failure to do so precludes the appellate court from considering the issue. The purpose of this contemporaneous objection rule "is to ensure that the trial court has the opportunity to rule intelligently on a party's objections and avoid unnecessary mistrials or reversals." Johnson v. Raviotta, 264 Va. 27, 33, 563 S.E.2d 727, 731 (2002).

The majority holds that Amos's argument is defaulted because she never obtained a ruling on her motion to vacate the contempt order. We have held in some circumstances that a litigant who fails to obtain a ruling at trial has forfeited the point for purposes of appellate review. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998). In Brandon v. Cox, 284 Va. 251, 256-57, 726 S.E.2d 298, 301 (2012), the Supreme Court of Virginia recently held that a motion for reconsideration was insufficient to avoid procedural default because no hearing was requested on the motion and neither was a ruling sought from the

---

[9] This is not to say that Amos cannot be held accountable. The Commonwealth's Attorney, the officer who bears the responsibility for prosecuting violations of the criminal laws of the Commonwealth in a given locality, can choose in her discretion whether the facts warrant charging Amos with perjury. Similarly, Amos might be held in indirect contempt following notice and the opportunity to be heard, as required by the Due Process Clause and precedent from the Supreme Court of Virginia.

trial court. Without such an additional step, beyond the mere filing of the motion for reconsideration, the Court concluded that the motion did not fall within the strictures of Code § 8.01-384(A). That statute provides in relevant part that "[n]o party, *after having made an objection or motion known to the court*, shall be required to make such objection or motion again in order to preserve his right to appeal, challenge, or move for reconsideration of, a ruling, order, or action of the court." (Emphasis added). In other words, in the wake of <u>Brandon</u>, merely filing a motion for the court to reconsider its ruling in time for corrective action is not sufficient if the reconsideration motion is the first time a litigant raises a particular argument or objection; an additional step must be taken to make sure that this motion is "known to the court."[10] Amos did not seek to place her motion on the docket or otherwise make it known to the trial court. At first blush, <u>Brandon</u> may appear controlling. In my view, that is not so, for two reasons.

First, Code § 8.01-384(A) provides that "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him on motion for a new trial or on appeal." The majority holds that the record does not show that Amos was prevented from speaking following the court's announcement that she was being held in contempt. I read the record differently.

At the conclusion of the hearing, the trial court dismissed the rule to show cause filed by the Commonwealth. The court then stated that it was "not through." The court summoned Amos to come up and noted that "what we do have is a . . . situation that this Court does not take

---

[10] On one reading, Code § 8.01-384(A) assumes that the act of filing objections or a motion for reconsideration, without more, makes the objection or motion known to the trial court. The statute provides that "[a]rguments made at trial via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts *shall, unless expressly withdrawn or waived, be deemed preserved* therein for assertion on appeal." (Emphasis added). The statute does not expressly require a litigant to place the motion or objection on the docket to make it known to the trial court. Such a reading of the statute, however, is foreclosed by the holding in <u>Brandon</u>.

- 10 -

lightly." In an uninterrupted monologue, the court chided Amos because she had "flat out lied under oath" and the court stated that it would not tolerate Amos using the court process to further her vindictiveness toward her former husband. The court found that Amos had engaged in "[m]isbehavior in the presence of the court or so near thereto as to obstruct or interrupt the administration of justice." The court then stated that:

> I can't think of any more interruption of justice than what you have done deliberately in this courtroom.
> And the Court finds you in contempt of court. You're sentenced to jail for ten days.
> Remand her into custody, Sheriff.
> THE COURT: Call the next case.
> (Whereupon, the proceedings at 11:00 a.m. were concluded).

Unsurprisingly, Amos did not object at the time. As I read this record, and applying the plain language of Code § 8.01-384(A), Amos had "no opportunity to object to a ruling or order at the time it is made," and, therefore, "the absence of an objection shall not thereafter prejudice [her] . . . on appeal." Neither Brandon nor Ohree address that portion of the statute and, therefore, do not control.

Applying procedural default in this circumstance is problematic for a second reason. We expect lawyers or *pro se* litigants to come to court prepared and to be aware of the rules. An adversarial system of justice requires as much to function properly. Therefore, if a *party* does not object, that failure to timely object ordinarily will foreclose appellate review of the issue for which there was no timely objection. Here, Amos was a witness, not a party. To expect parties to come to court prepared to timely object is sensible enough. To expect *a witness* to master the nuances of due process and summary contempt versus indirect contempt is to expect the impossible. Rule 5A:18 presupposes that the person who is expected to object is an attorney or a *pro se* litigant rather than a witness and, consequently, the procedural bar does not apply here.

- 11 -

II. Summary contempt was not appropriate based on the testimony of a witness, even if that testimony is perjured.

The exercise of the contempt power "'is a delicate one and care is needed to avoid arbitrary or oppressive conclusions.'" Scialdone v. Commonwealth, 279 Va. 422, 442, 689 S.E.2d 716, 727 (2010) (quoting Cooke v. United States, 267 U.S. 517, 539 (1925)). Summary contempt is reserved for "exceptional circumstances . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings." Vaughn v. City of Flint, 752 F.2d 1160, 1167 (6th Cir. 1985). The United States Supreme Court has held that holding a witness in contempt based on that witness' testimony alone violates due process. In re Oliver, 333 U.S. 257, 284 (1948); see also Ex parte Hudgings, 249 U.S. 378 (1919) (court lacks the power to hold a witness in summary contempt based on untruthful testimony; the individual held in contempt must also harbor an obstructive intent). Summary contempt is viewed with particular disfavor when a court delays punishing a direct contempt until the completion of trial. See Taylor v. Hayes, 418 U.S. 488, 498 (1974). In that situation, "it is much more difficult to argue that action without notice or hearing of any kind is necessary to preserve order and enable [the court] to proceed with its business." Id. It is clear from the record that the trial court held Amos in contempt based on her testimony, testimony that the court believed (not without reason) was perjured. On these facts, holding Amos in summary contempt was error. I would, therefore, reverse the judgment below.[11]

Accordingly, I respectfully dissent.

---

[11] The fact that Amos impelled the Commonwealth to file a show cause does not change the answer. Summary contempt applies when the conduct in question occurs "'in open court, in the presence of the judge . . . where all of the essential elements of the misconduct [were] actually observed by the court.'" Scialdone, 279 Va. at 444, 689 S.E.2d at 728 (quoting In re Oliver, 333 U.S. at 275). Amos's drafting and mailing of a letter to the Commonwealth Attorney, with a copy to the court, in which she detailed the allegations against her former husband, did not occur in the presence of the court.