COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Fulton and White
Argued by videoconference

DEREK S. HELTON

v.      Record No. 0355-24-3

HENRY-MARTINSVILLE DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
SEPTEMBER 24, 2024

FROM THE CIRCUIT COURT OF HENRY COUNTY
G. Carter Greer, Judge

Kimble Reynolds, Jr. (Kimble Reynolds & Associates, on brief), for
appellant.

Jeremy E. Carroll (Brian H. Richardson; George A.H. Lyle, Henry
County Attorney; Heath L. Sabin, Guardian ad litem for the minor
children; Spilman Thomas & Battle, PLLC; Sabin Law Office, PC,
on brief), for appellee.


Derek S. Helton ("father") appeals the circuit court's termination of his residual parental

rights under Code § 16.1-283(C)(2). Father contends that the circuit court erred by finding

sufficient evidence to terminate his residual parental rights and by denying his motion to continue

his trial. For the following reasons, we affirm the circuit court's judgment.

I. BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable'" to the Henry-Martinsville Department of Social Services (the "Department"), as "the

_____

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The record in this case was sealed, but this appeal necessitates unsealing relevant
portions of the record to resolve the issues raised by father. Accordingly, "[t]o the extent that
this opinion mentions facts found in the sealed record, we unseal only those specific facts,
finding them relevant to the decision in this case. The remainder of the previously sealed record

prevailing party below." *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)).

Father and Elizabeth Joanne Helton ("mother") are the biological parents of S.H., K.H., and Z.H.[2] The Department became involved with the family in 2015 following complaints that the children had been found wandering away from home unsupervised. K.H. and S.H. entered foster care for the first time in 2016 after K.H., then four years old, was found walking alone on the side of the road at 4:30 a.m., barefoot and wearing only a t-shirt and underwear despite the fact that it was cold and raining. When questioned about the incident, the parents admitted that they could not pass drug tests because they had smoked marijuana. The children were subsequently returned to their parents.

In April and May 2021, Z.H., then almost two years old, was discovered unsupervised in the roadway on two separate occasions. The Department removed all three children from the parents' custody and initially placed them with a neighbor as part of a safety plan. All three children entered foster care on May 12, 2021.

The Henry County Juvenile and Domestic Relations District Court (the "JDR court") adjudicated that Z.H. had been abused or neglected and that S.H. and K.H. were at risk of being abused or neglected. In July 2021, the JDR court entered dispositional orders approving foster care plans for the children with the goal of returning them home. To meet that goal, the Department required father to meet six criteria: he needed to provide safe and stable housing, display an increased understanding of the children's developmental and emotional needs, refrain

---

remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017). Additionally, we use initials, rather than names, to protect the privacy of the minors mentioned in this opinion.

[2] The circuit court also terminated mother's parental rights; she separately appealed to this Court. *See Helton v. Henry-Martinsville Dep't of Soc. Servs.*, No. 0039-24-3 (Va. Ct. App. Sept. 24, 2024) (this day decided).

from using illegal substances, complete and pass drug screens, complete services recommended by the Department, and maintain responsibility for the children. The Department offered father supervised visitation with the children and recommended substance abuse counseling and parenting classes.

Later, the JDR court approved the Department's revised foster care plans updating the primary goal for the children to adoption due to allegations that they engaged in sexual behaviors they learned from a video on father's phone. The court's order noted that both parents were under a pending Child Protective Services investigation related to sexual abuse. That December, father was charged with sexual abuse of S.H. and K.H. The Department filed petitions to terminate father's residual parental rights, which the JDR court denied.

The Department appealed the JDR court's rulings to the circuit court, and the case was scheduled for trial. Father moved for a continuance, asserting that, because the allegations of criminal conduct "relate to the children," he "would potentially incriminate himself" in the criminal matter if he were to testify in the termination proceedings. The circuit court ordered that the trial "shall be continued generally until [father's] criminal proceedings [had] concluded."

On the day of trial, father moved for another continuance.[3] The circuit court denied the motion.[4] The record does not indicate whether father's second motion was written or oral, the reason father gave for requesting another continuance, or the argument, if any, father advanced in support of his motion.

---

[3] From the content of father's first motion, we can infer that he made his second motion because his criminal proceedings had not yet concluded, however, the record does not make it clear whether the criminal proceedings were still pending at the time of trial.

[4] Pursuant to Rule 5A:8(c), father submitted a written statement of facts in lieu of a transcript of the circuit court trial. The signed written statement's sole reference to father's motion notes that "[a]t the hearing, the court denied the father's motion for a continuance."

Whitney Sligh, a Department social worker, testified that the children were "fearful of returning home and made statements complaining of the parents' behavior." In addition, father had not visited the children since June 2022 and had not contacted them since summer 2022. Courtney Elhardt, the children's foster mother, testified that they had "sexualized behaviors." The Department introduced as exhibits the children's drawings depicting such behaviors, as well as foster care service plans demonstrating that father played a role in their learning those behaviors and that he did not complete the required substance abuse treatment or parenting classes. The plans further noted that the children were doing "well" in foster care. Similarly, Elhardt testified that the children "felt safe and secure after more than two years" and had begun to "thrive" in foster care. Based on their observation of the children, Sligh and Elhardt opined—and the children's guardian ad litem agreed—that it was in the children's best interests to be adopted. Father offered no evidence.

The circuit court terminated father's residual parental rights under Code § 16.1-283(C)(2), finding he had not remedied the circumstances which led to the children's continued placement in foster care despite the Department's reasonable efforts.[5] This appeal followed.

## II. ANALYSIS

On appeal, father argues that the circuit court erred by finding sufficient evidence that termination of his residual parental rights was in the children's best interests. He also contends

---

[5] The form orders relating to S.H. and Z.H. indicate that father's residual parental rights were terminated under Code § 16.1-283(C)(2); however, the order relating to K.H. contains a clerical error in that it does not indicate the relevant termination code section. It is apparent from the record that father's residual parental rights to K.H. were also terminated under Code § 16.1-283(C)(2), as the written statement of facts indicates that the circuit court "terminated the father's rights pursuant to Virginia Codes [sic] Section 16.1-283 finding the father had not remedied the circumstances which led to the child's continued placement in foster care despite the reasonable efforts of the [Department]."

- 4 -

he was "denied his rights pursuant to the Fourteenth Amendment's Due Process Clause" when the circuit court denied his motion for a continuance.

## A. Sufficiency of the Evidence

"'On review of a trial court's decision regarding the termination of parental rights, we presume the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."'" *Joyce*, 75 Va. App. at 699 (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)). "Furthermore, '[t]he credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented.'" *Id.* (alteration in original) (quoting *Harvey v. Flockhart*, 65 Va. App. 131, 146 (2015)).

Code § 16.1-283(C)(2) authorizes a court to terminate residual parental rights if it finds, based upon clear and convincing evidence, that such is in the best interests of the child and that:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271

(2005)).  "Considerably more 'retrospective in nature,' subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services."  *Toms*, 46 Va. App. at 271 (quoting *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 562 (2003)).

Father argues that "he maintained contact with [the children] by continuously exercising his visitation" after they entered foster care and that he had completed the services the Department required.  The record does not support these claims.  Instead, father did not complete the required parenting classes or substance abuse treatment.  He also did not visit with the children after June 2022, or have any contact with them after summer 2022.  Contrary to father's contention, between the time the children entered foster care in May 2021 and the circuit court trial in November 2023, father failed to meet all the Department's six criteria for returning the children home.  This elapsed time was well outside that prescribed by Code § 16.1-283(C)(2). *See Joyce*, 75 Va. App. at 704 ("The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." (quoting *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 56 (2003))).

At the time of trial in circuit court, the children were thriving in foster care and "felt safe and secure" there.  By contrast, they were "fearful of returning home" and "complain[ed]" of father's behavior.  And they had been in foster care for almost two and a half years.  "[I]t is in the best interests of children to receive a permanent placement without languishing in the foster system."  *Simms*, 74 Va. App. at 464.  And "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."  *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62

- 6 -

Va. App. 296, 322 (2013) (second alteration in original) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)). Thus, we cannot say that the circuit court erred in finding it was in the best interests of the children to terminate father's parental rights under Code § 16.1-283(C)(2).

## B. Motion for Continuance

Father argues that the circuit court denied him his rights under the Fourteenth Amendment's Due Process Clause when it denied his second motion for a continuance, because he was "unavailable" as a witness since he invoked his right to remain silent due to the pending criminal charges against him. We cannot reach the merits of this assignment of error because the record does not indicate that it was properly preserved for our review.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose," *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019), which is "to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials,'" *Maxwell v. Commonwealth*, 287 Va. 258, 273 (2014) (quoting *Brandon v. Cox*, 284 Va. 251, 255 (2012)). "Rule 5A:18 applies to bar even constitutional claims." *Stokes v. Commonwealth*, 61 Va. App. 388, 396 (2013) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)). Where a party fails to properly object to the lower court's ruling on an issue, he waives that issue on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 642 (2009).

On the record before us, we cannot determine whether father timely objected to the circuit court's ruling on his second motion for a continuance. The written statement of facts

notes only that "the court denied the father's motion for a continuance"; it does not indicate whether father objected to this particular ruling.[6] "[O]n appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." *Eckard v. Commonwealth*, ___ Va. ___, ___ (Aug. 1, 2024) (quoting *Justis v. Young*, 202 Va. 631, 632 (1961)). "If the appellant fails to do this, the judgment will be affirmed." *Id.* at ___ (quoting *Justis*, 202 Va. at 632). This is so because "[w]e may act only upon facts contained in the record." *Browning v. Browning*, 68 Va. App. 19, 27 (2017) (quoting *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993)). Because the record here does not show that father objected to the challenged ruling, any issue related to that ruling is waived for appeal purposes.

Additionally, the record is silent on whether father presented the same constitutional argument to the circuit court in his second motion for a continuance as he did in his earlier written motion, which was granted.[7] "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial," because "neither an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court.'" *Bethea*, 297 Va. at 743-44 (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)). Father has not provided an adequate record from which we can discern whether he raised a constitutional issue in his second motion for a continuance, so he has waived that argument under Rule 5A:18. And although the rule contains exceptions for good

---

[6] By contrast, father properly noted his objection to the circuit court's ruling terminating his residual parental rights by indicating on the final order that it was "seen and objected to."

[7] Indeed, it is even unclear whether father's criminal charges were still pending at the time of trial in early November 2023, because in granting father's earlier motion, the circuit court continued the trial, which was originally scheduled for late January 2023, "until [father's] criminal proceedings [had] concluded."

cause shown or to enable us to attain the ends of justice, father has not invoked them, and we do not raise them sua sponte. *See Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023). Accordingly, we cannot consider father's second assignment of error.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment. However, under Code § 8.01-428(B), we remand the matter to the circuit court to correct the clerical error in its final order related to K.H., as described in n.5, *supra*.

*Affirmed and remanded.*