COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Ortiz and Lorish
Argued at Fredericksburg, Virginia


CHOONG SEI LEE

MEMORANDUM OPINION* BY
v.        Record No. 1234-23-4             JUDGE MARY GRACE O'BRIEN
                                           APRIL 29, 2025

SPRINGFIELD COLLISION CENTER, INC., ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Tania M. L. Saylor, Judge

Weon Geun Kim (Law Office of Weon G. Kim, on brief), for
appellant.

Peter W. Rim (R. Dieter J. Lohrmann; Lohrmann & Rim, P.C., on
brief), for appellees.


Choong Sei Lee (appellant) appeals the dismissal of his complaint for a confessed judgment

on a $260,000 promissory note with a maturity date of March 25, 2013.  The court found that the

action was barred by the statute of limitations and granted the plea in bar of Springfield Collision

Center, Inc., Yong Hyun Kim, and Hye Y. Kim (collectively, appellees).  Appellant contends that

the court erred by not striking the plea in bar as either insufficiently pled or untimely filed.

Appellant further argues that the court erred by not finding sufficient evidence of a "new promise to

pay" that triggered a new limitations period under Code § 8.01-229(G).  For the following reasons,

we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

(i) Promissory Note

On March 3, 2008, appellees signed a promissory note for $260,000 to purchase an autobody shop. The note required payments for 60 months, with the full debt "due and payable" on March 25, 2013—the maturity date. The note contained a "confession of judgment" provision, allowing the noteholder to obtain a judgment against appellees "without further notice" in the event of default.

The original noteholder was Hak Soon Lee, appellant's now ex-wife. Appellees stopped making payments prior to the note's maturity date. Although "failure to make any monthly installments" constituted an event of default under the terms of the note, Hak Soon Lee took no enforcement action but simply accepted that appellees' "business wasn't doing well at that time" and she "received what [she] got."

Hak Soon Lee assigned the note to appellant on January 29, 2014, as part of their divorce proceedings. The assignment document provided that the note's "current balance due" was $120,234.13. At the time of the assignment, the Lees did not realize that the note had matured.

As the new assignee of the note, appellant called Yong Hyun Kim ("Kim") to demand payment, but he did not commence legal action because Kim "said repeatedly" that "he will make payments."

(ii) 2021 Complaint and Responsive Pleadings

In September 2021, appellant filed a complaint for a confessed judgment, asserting one count against appellees "demand[ing] note payment" and a second count against Hak Soon Lee for a declaratory judgment that appellant was the assignee on the note and solely entitled to payment. Appellees filed an answer and affirmative defenses, which included the phrase "Statute of Limitations." Hak Soon Lee demurred on the ground of misjoinder of parties. The court sustained

her demurrer and allowed appellant to file an amended complaint, which restated count one against appellees and added allegations to support a claim for a monetary judgment against Hak Soon Lee in count two.

Hak Soon Lee demurred to the amended complaint and filed a plea in bar based on the statute of limitations. Appellees also responded to the amended complaint with a plea of the statute of limitations. The court subsequently entered a consent order dismissing Hak Soon Lee from the case.

Appellant moved to "strike the defense of [the] statute of limitations in [appellees'] answer and plea." He argued that (1) appellees' answer to the original complaint did not sufficiently plead the defense; and (2) appellees' plea in bar was untimely because it needed to be filed within 21 days of the original complaint, not in response to the amended complaint, which was only amended with respect to Hak Soon Lee. Appellees responded that (1) their answer listing "Statute of Limitations" as an affirmative defense satisfied pleading requirements; and (2) their plea was timely because it responded to the amended complaint, which had supplanted the original complaint.

The parties convened for a hearing on appellees' plea in bar and appellant's motion to strike the statute-of-limitations defense. Although the record contains no transcript from the hearing, it does contain an order directing the parties to set an evidentiary hearing on the merits of the statute-of-limitations defense.

(iii)  Evidentiary Hearing

At the subsequent evidentiary hearing, appellees established that the note contained an express maturity date of March 25, 2013, which was never extended, and they argued that Code § 8.3A-118(a) required commencing an enforcement action within six years of maturity. According to appellees, because appellant did not file his complaint until September 2021, it was barred by the statute of limitations.

- 3 -

Appellant contended that two 2014 handwritings by Kim renewed the note after maturity and that two 2016 payments further extended the limitations period to 2022. The first document was a typed monthly payment schedule for the note, with a handwritten date of "1/17/2014" and Korean lettering in the left margin. Appellant did not witness the document being made, and the court did not let him translate the Korean or speculate who produced the handwriting,[1] but he testified that he first saw the document "during the process of divorce" and understood it to mean that he was "supposed to receive . . . [f]rom Kim" "payment 36 to payment 60."

The second handwriting was a copy of the assignment document, with the handwritten date of "4/9/2014" at the bottom and more Korean lettering. Appellant testified that he and Kim signed the document on April 9, 2014, and it reflected Kim's renewed promise to pay the note, with a deduction for repairs he made to appellant's daughter's car.

The two payments were checks dated February 20, 2016 and June 10, 2016, drawn from Springfield Collision Center's corporate account. Appellant testified that the Korean word in the memo line for each check translated as "Note Pay" and referred to the promissory note.

Appellant argued that, even though an action to enforce a promissory note must be brought within six years from the date of maturity under Code § 8.3A-118(a), the handwritten notations from 2014 and checks from 2016 tolled the limitations period under Code § 8.01-229(G) because they constituted acknowledgements of the debt and new promises to pay. According to appellant, he had six years from 2016 (i.e., until 2022) to file suit—which he did by filing suit in September

---

[1] The other evidence about the document's creation and handwriting was contested. In discovery responses, which were admitted into evidence, Hak Soon Lee admitted that she witnessed Kim make the handwritten notes on the payment schedule. In her testimony, however, Hak Soon Lee merely said that the handwriting looked like Kim's, but she was only speculating because she was not present when it was written. However, this factual dispute is immaterial, considering our analysis of the issues on appeal, whereby we assume without deciding that only the subsequent handwriting could have tolled the statute of limitations.

2021. Appellant also reargued the two bases for his motion to strike the statute-of-limitations defense.

The court dismissed the action as time-barred. It found that (1) the note had matured on March 25, 2013; (2) the applicable six-year limitations period expired on March 25, 2019; (3) the April 9, 2014 handwriting of Kim was the only possible writing that could have tolled the limitations period under Code § 8.01-229(G), but could only have extended the limitations period to 2020; (4) Kim did not make any payments after April 9, 2014 and would have been in default again by May 2014, requiring appellant to commence an action by May 2020; and (5) the 2016 payments did not constitute a new promise to pay as contemplated under Code § 8.01-229(G).[2]

ANALYSIS

I. Appellant's Procedural Challenges (Assignments of Error 1 and 2)

Appellant's first two assignments of error assert procedural challenges to the court's grant of appellees' plea in bar. First, appellant argues that appellees' use of three words—"Statute of Limitations"—in their answer to the original complaint was insufficient for the court later to grant their plea in bar. Second, appellant argues that appellees' plea in bar was untimely because it was filed in response to the amended complaint, which had not been amended with respect to appellees (only to Hak Soon Lee). For the plea in bar to be viable, appellant contends, appellees were required to file it within 21 days of the original complaint, not the amended complaint.

We review the interpretation of statutes and the Rules of the Supreme Court de novo. *Muse Constr. Grp., Inc. v. Com. Bd. for Contractors*, 61 Va. App. 124, 130 (2012) (en banc).

_____

[2] The court made other findings not encompassed in appellant's assignments of error: even if the April 9, 2014 handwriting tolled the limitations period against Kim, no evidence established tolling against the other appellees; and appellant failed to adduce sufficient evidence of tolling against all appellees.

As a threshold matter, we reject appellees' contention that these issues are waived under *Brandon v. Cox*, 284 Va. 251 (2012), because appellant failed to obtain a ruling on his motion to strike the statute-of-limitations defense. *Brandon* is readily distinguishable. There, the appellant was found to have waived her sole assignment of error by raising the issue for the first time in a motion to reconsider a final order and then failing to obtain a ruling on that motion. 284 Va. at 255-56. The *Brandon* Court stated that the purpose of the contemporaneous-objection rule is to "protect the trial court from appeals *based upon undisclosed grounds*, to prevent the setting of traps on appeal, to *enable the trial judge to rule intelligently*, and to avoid unnecessary reversals and mistrials." *Id.* at 255 (emphases added) (quoting *Reid v. Boyle*, 259 Va. 356, 372 (2000)). Merely filing a motion for reconsideration did not serve these purposes and thus could not preserve the argument for appeal. *See id.*

Unlike in *Brandon*, appellant here raised his procedural challenges to the statute-of-limitations defense on several occasions prior to entry of the final order: in a memorandum opposing appellees' plea of the statute of limitations; in a motion to strike and a supporting memorandum; and in closing arguments at the evidentiary hearing itself, where he stated that he was "going to go back to my memorandum . . . for the [sic] record purposes" and then argued—as he does here—both that the initial answer to the complaint insufficiently pled the statute-of-limitations defense and that the plea in bar was untimely. These were not simply arguments tacked on to a motion to reconsider and never presented to a judge or opposing counsel. Indeed, appellees responded twice—in a written brief and in closing arguments at the hearing. Thus, appellant's arguments on appeal were raised, responded to, heard by the court, and effectively rejected when the court ruled on the merits of plea in bar.

A party satisfies Rule 5A:18 if he makes an objection "at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the

asserted error." *Maxwell v. Commonwealth*, 287 Va. 258, 273 (2014) (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010)).  Here, the trial judge had ample opportunity to consider the issues of whether appellees' plea in bar was insufficiently pled or untimely and to rectify the asserted error by striking appellees' pleadings.

Turning to the merits, the court properly rejected appellant's motion to strike the statute-of-limitations defense.  In reaching this conclusion, we need not consider appellees' answer to the original complaint.  When a party files an amended complaint, the original complaint is considered a nullity unless the face of the amended complaint clearly demonstrates a different intention.  *See Ayers v. Shaffer*, 286 Va. 212, 217 (2013) (considering "only the allegations contained in the amended pleading," which did "not incorporate or refer to any of the allegations that were set forth in a prior complaint").  "When an amended [pleading] . . . is filed and a comparison of the original and amended pleading shows that the amended [pleading] was intended as a substitute for the original, the case stands as though the original had never been filed." *Breeding by Breeding v. Hensley*, 258 Va. 207, 212 (1999).  Appellant's amended complaint did not incorporate or refer to the original complaint; instead, it restated count one against appellees and reframed count two against Hak Soon Lee.  The new allegations and theory of liability against Hak Soon Lee had the potential to affect the interests of appellees.  The amended pleading was clearly intended as a full substitute for the original, rendering that original a legal nullity.  *See id.* Accordingly, appellees' pleading in response to that original complaint was also a nullity.  If appellees had not responded to the amended complaint in 21 days, then they would have been in default.  *See* Rule 3:19(a).

Appellees did respond within 21 days by filing their plea of the statute of limitations.  *See* Rule 3:8 (listing a "plea" as a proper pleading for purposes of the 21-day response requirement). The viability of that plea did not depend on appellees' response to the original complaint.  Instead,

the plea was viable because it complied with minimal requirements in Code § 8.01-235 and Rule 3:18(d). Code § 8.01-235 prevents a party from relying on a statute of limitations defense without first "raising [it] as an affirmative defense specifically set forth in a responsive pleading." Rule 3:18(d) provides that a party sufficiently pleads the statute-of-limitations defense even "without specifying the particular statute relied on." With multiple paragraphs of argument and explanation, appellees' plea more than satisfied these requirements and was sufficient to put the defense before the court.[3]

## II. Tolling under Code § 8.01-229(G)(1) (Assignment of Error 3)

Appellant next challenges the substance of the court's decision that his action was barred by a six-year statute of limitations for promissory notes under Code § 8.3A-118(a). Specifically, appellant contends that the court erred in finding the evidence insufficient to extend the statute of limitations under Code § 8.01-229(G)(1). That statute provides as follows:

> If any person against whom a right of action has accrued on any contract . . . *promises, by writing* signed by him or his agent, payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action. An *acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise* within the meaning of this subsection.

(Emphases added). Under Code § 8.01-229(G)(1),

> in order for an acknowledgement in writing to operate as a new promise to pay, and commence the running of a new statute of limitations period, it "must not consist of equivocal, vague and indeterminate expressions; but ought to contain an unqualified and direct admission of a previous, subsisting debt, which the party is liable for and willing to pay."

---

[3] We note that appellees' use of three words—"Statute of Limitations"—in their answer to the original complaint would have been sufficient to preserve the defense. *See* Code § 8.01-235; Rule 3:18(d).

*Rest. Co. v. United Leasing Corp.*, 271 Va. 529, 539 (2006) (quoting *Nesbit v. Galleher*, 174 Va. 143, 148 (1939)).

According to appellant, Kim's handwritings from 2014 served as an acknowledgment of the note amounting to an implied promise to pay, and the two checks from 2016 extended the statute of limitations to 2022. We disagree.

Assuming without deciding that the April 2014 handwriting constituted a new promise to pay, it would only have extended the statute of limitations to 2020, which would still have expired before appellant filed his complaint in September 2021. *See* Code § 8.3A-118(a); *see also* Code § 8.01-229(G)(1) (stating that any new limitations period commences after the new promise to pay as if "such promise were the original cause of action").

Appellant tries to circumvent this rule by arguing that the 2016 checks delayed the expiration of the limitations period even further—to 2022. He argues that the phrase "Note Pay" in the memo lines sufficiently linked the checks to the original debt, which was revived in the 2014 handwritings, and therefore the checks themselves constituted new promises to pay.

The Supreme Court has held that memo notations on checks are insufficient to revive a debt after the expiration of a statute of limitations. *See generally Quackenbush v. Isley*, 154 Va. 407 (1930) (analyzing an older, but functionally equivalent, version of Code § 8.01-229(G)(1)). In *Quackenbush*, Isley executed a promissory note to Quackenbush and paid interest for 26 years, but he never paid the principal. *Id.* at 408-09. After Isley's death, Quackenbush sued on the note, and Isley's executor raised a statute-of-limitations defense. *Id.* at 410. Quackenbush argued that Isley's interest payments, and the fact that the checks had notations of "M.E. Quackenbush Interest" on them, "revive[d]" and "infuse[d] new life" into the note as implied promises to pay, thus preventing the statute from running during that time. *Id.* at 409, 411-13. The Court disagreed, finding that the checks reflected neither a "determinate and unequivocal

promise of payment" nor an "acknowledgment of the unqualified admission of a subsisting debt." *Id.* at 414.

In finding that the check notations were not new promises of payment, the Court noted that "the great majority of checks that are drawn in the business world have upon them indicia of the purpose for which they are drawn. They are intended in many instances to serve as receipts." *Id.* Moreover, any signature merely enabled the check to be processed but did not signify a promise to revive an old debt. *See id.* (noting that "[a] check must bear the signature of the drawer[, or] else it would be invalid"). The Court explained,

> If we concede that the interest was paid in advance for a long
> period of years, for reasons not revealed, or for no reason at all
> except the whim or habit of the debtor, still we cannot allow this
> circumstance alone to cause us by our decision to fritter away the
> solemn and binding force of our statute [of limitations].

*Id.* Thus, the payment of interest, even with check notations identifying the note, did not constitute a renewed promise to pay the principal. *Id.* at 413-14.

Here, the court determined that the two 2016 checks did not constitute new promises to pay. That factual determination is not plainly wrong. *See Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010) (stating that factual findings for a plea in bar "are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support"). Similar to *Quackenbush*, the 2016 checks had memo notations, "Note Pay," in Korean. As Kim testified, he wrote "Note Pay" on the checks as reminders to himself about how corporate funds were being used. These notations were not unqualified admissions of debt amounting to new promises to pay. *See Quackenbush*, 154 Va. at 413-14; *see also Rest. Co.*, 271 Va. at 529.

Additionally, in determining whether debt payments remove the bar of the statute of limitations, courts "look not only to the fact of the payment, but to all the surrounding and

attending circumstances to see whether a payment on an account implies an intention to acknowledge the balance of the account and promise to pay it." *Bell v. Crawford*, 49 Va. (8 Gratt.) 110, 130-31 (1851). In assessing these circumstances, the *Bell* Court emphasized that "[w]hat the debtor says at the instant of making the payment is the best evidence of his intention." *Id.* at 131. Here, Kim's handwritings and checks were made two years apart. Considering this time gap, the court was not plainly wrong in finding that the 2014 handwritings coupled with the 2016 checks did not reflect Kim's intention or implied promise to renew the debt.

At best, the 2016 checks were payments toward the debt previously renewed in 2014. But, even then, they did not restart the statute-of-limitations clock. Under Code § 8.01-229(G)(1), a new limitations period runs from the date of the new promise to pay. *See Rest. Co.*, 271 Va. at 539 (determining whether a new promise to pay "commence[d] the running of a new statute of limitations period" under Code § 8.01-229(G)(1)). Nothing in the statute would permit payments on a renewed debt to restart the clock. Indeed, if a new six-year limitations period commenced each time appellees made a payment toward the renewed debt obligation, appellant's opportunity to file suit could potentially extend ad infinitum. Such a circumstance would "fritter away the solemn and binding force" of the statute of limitations. *Quackenbush*, 154 Va. at 414.

## CONCLUSION

For these reasons, the court did not err in sustaining appellees' plea of the statute of limitations and dismissing appellant's action with prejudice.

*Affirmed.*